**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| NABORS DRILLING TECHNOLOGIES USA, INC. | ) | |
| Plaintiff, | ) | C.A. No. 4:22-cv-02140 |
| v. | ) | **JURY TRIAL DEMANDED** |
| C&M OILFIELD RENTALS, LLC D/B/A C-MOR ENERGY SERVICES, | ) | |
| Defendant. | ) | |

**DEFENDANT C&M OILFIELD RENTALS, LLC'S ANSWER TO PLAINTIFF'S ORIGINAL COMPLAINT FOR DECLARATORY JUDGMENT AND ORIGINAL COUNTERCLAIM AGAINST NABORS**

Pursuant to Rule 15 of the Federal Rules of Civil Procedure, Defendant C&M Oilfield Rentals, LLC ("C&M") through undersigned counsel hereby submits its Answer to the Original Complaint for Declaratory Judgment filed by Plaintiff Nabors Drilling Technologies USA, Inc. ("Nabors" or "Plaintiff"), and Original Counterclaim against Nabors.

## NATURE OF THE ACTION[1]

1. This action arises under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and the patent laws of the United States of America, 35 U.S.C. § 101, *et seq.*

**Answer:** C&M admits this action purports as its bases the Declaratory Judgment Act and U.S. patent law.

## PARTIES

2. Plaintiff Nabors is a Delaware corporation having a principal place of business at 515 W. Greens Road, Houston, Texas 77067. As part of its business, Nabors is involved in oil and gas well drilling services with a fleet of next generation drilling rigs.

[1] Section headings and paragraph numbering from the Complaint are repeated herein for convenience, and do not constitute an admission of any allegations, which are denied unless specifically addressed and admitted by C&M.

**Answer:** C&M admits Nabors is involved in oil and gas well drilling services. C&M is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations of this paragraph, and therefore denies the same.

3. Defendant C&M is a Wyoming limited liability company with its principal place of business located at 3429 Cottonwood Avenue, Cody, Wyoming 82414. C&M may be served though its registered agent Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company at 211 E. 7th Street, Suite 620, Austin, Texas, 78701.

**Answer:** Admitted.

**JURISDICTION AND VENUE**

4. This is a civil action regarding allegations of patent infringement, patent invalidity, and patent unenforceability arising under the patent laws of the United States, Title 35 of the United States Code, in which Nabors seeks declaratory relief under the Declaratory Judgment Act. Thus, this Court has jurisdiction of this matter pursuant to 28 U.S.C. §§ 1331, 1332, 1338, 1367, 2201 and 2202.

**Answer:** C&M admits this is a civil action where Nabors seeks declaratory relief relating in part to Nabors' infringement of C&M's U.S. Patent No. 11,300,260 ("the '260 Patent"). The allegations of this paragraph relating to subject matter jurisdiction contain legal conclusions to which no response is required. To the extent a further response is required, the allegations of this paragraph are denied.

5. An actual controversy exists between Nabors and C&M concerning Nabors' lighting system installed on some of its drilling rigs.

**Answer:** Admitted.

6. Nabors contends that it has the right to make, use, have made, sell, offer for sale and import lighting systems for its fleet of drilling rigs without license from C&M.

**Answer:** C&M admits Nabors contends that it has rights. The remaining allegations of this paragraph are denied.

7. This Court has personal jurisdiction over C&M in that C&M conducts business, including selling and leasing products, throughout the United States including within the State of Texas and within this judicial district. As a result, C&M purposefully avails itself of the privilege of doing business in the Southern District of Texas. Moreover, by doing business in the Southern

District of Texas, C&M avails itself of the protections of the Southern District of Texas, and in turn, consents to jurisdiction in the Southern District of Texas.

**<u>Answer</u>:** C&M states it does not contest personal jurisdiction for purposes of this lawsuit only. To the extent a further response is required, the allegations of this paragraph are denied.

8. Further, this Court has personal jurisdiction over C&M arising from C&M's own purposeful and tortious conduct directed in Texas, including sending demand letters accusing Nabors of infringing C&M's patents. Nabors received a demand letter from C&M on or about June 20, 2022 accusing Nabors of infringing "one or more of C-MOR™'s patents, including U.S. Patent No. 11,300,260," and violating C&M's "'Non-Compete' terms included in the drop tickets, delivery tickets, and other rig up paperwork."

**<u>Answer</u>:** The allegations of this paragraph relating to venue contain legal conclusions to which no response is required. C&M states it does not contest personal jurisdiction for purposes of this lawsuit only. C&M admits sending a letter giving Nabors notice of infringing C&M's patents and of violating certain non-compete terms. The remaining allegations of this paragraph are denied.

9. Venue is proper in this district, *inter alia,* pursuant to 28 U.S.C. §§ 1391(b), 1391(c) and 1400(b). Moreover, C&M consented to venue in § 22 of the Master Services Agreement ("MSA") and § 11 of Nabors' Purchase Orders between the parties with respect to any alleged breach of contract claims.

**<u>Answer</u>:** The allegations of this paragraph relating to venue contain legal conclusions to which no response is required. C&M denies the allegations in this paragraph to the extent they contradict or otherwise mischaracterize the contents or applicability of the MSA or the Nabors' Purchase Orders.

## STATEMENT OF FACTS

10. On information and belief, C&M is the assignee of multiple United States patents and has filed patent infringement suits in this district to enforce those patents. Civil Action No. 4:22-cv-00965, *C&M Oilfield Rentals LLC d/b/a C-MOR Energy Services v. Ensign U.S. Southern Drilling LLC et al.,* In the United States District Court for the Southern District of Texas, Houston, Division, *See* Original Complaint (3/24/2022).

**<u>Answer</u>:** Admitted.

11. On June 20, 2022, C&M's President and CEO, Mr. Joshua C. Allison, sent Nabors a demand letter accusing Nabors' drilling rig lighting system of infringing "one or more of [C&M's] patents, including U.S. Patent No. 11,300,260."

**Answer:** Admitted.

12. Additionally, C&M's June 20, 2022, demand letter states "Nabors' actions also violate [C&M's] 'Non-Compete' terms included in the drop tickets, delivery tickets, and other rig up paperwork."

**Answer:** Admitted.

13. Nabors filed this action in response to C&M's June 20, 2022 accusation of patent infringement and breach of contract. Therefore, this Complaint presents a justiciable case or controversy.

**Answer:** C&M admits Nabors filed this action. C&M is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations of this paragraph, and therefore denies the same.

**FIRST CAUSE OF ACTION**
**Declaratory Judgment of Non-infringement of U.S. Patent No. 11,300,260**

14. Nabors hereby repeats, re-alleges and incorporates by reference every allegation contained in paragraphs 1 through 13 above as though fully stated herein.

**Answer:** To the extent this paragraph incorporates allegations from prior paragraphs, C&M also incorporates by reference herein its answers to those paragraphs.

15. There is an actual controversy between Nabors and C&M, as to whether Nabors infringes any valid and enforceable claim of U.S. Patent No. 11,300,260 (the "'260 Patent").

**Answer:** To the extent this paragraph suggests that the claims of U.S. Patent No. 11,300,260 are invalid or unenforceable, the allegations of this paragraph are denied; otherwise the allegations are admitted.

16. Nabors has not infringed and does not infringe any valid and enforceable claim of the '260 Patent.

**Answer:** Denied.

17. Accordingly, Nabors seeks a judgment declaring that it does not infringe and has not infringed, directly or indirectly, contributorily or by inducement, any claim of the '260 Patent.

**Answer:** C&M admits Nabors seeks a declaratory judgment. C&M denies that Nabors is entitled to the relief it seeks in this lawsuit. The remaining allegations of this paragraph are denied.

**SECOND CAUSE OF ACTION**
**Declaratory Judgment of Invalidity of U.S. Patent No. 11,300,260**

18. Nabors hereby repeats, re-alleges and incorporates by reference every allegation contained in paragraphs 1 through 17 above as though fully stated herein.

**Answer:** To the extent this paragraph incorporates allegations from prior paragraphs, C&M also incorporates by reference herein its answers to those paragraphs.

19. There is an actual controversy between Nabors and C&M, as to the invalidity of the '260 Patent.

**Answer:** C&M admits that there is an actual controversy between Nabors and C&M. To the extent this paragraph suggests that the claims of U.S. Patent No. 11,300,260 are invalid, the allegations of this paragraph are denied.

20. The '260 Patent is invalid for failure to comply with one or more of the requirements for patentability set forth in Title 35 of the United States Code or the rules, regulations and laws related thereto, including without limitation, the requirements of 35 U.S.C. §§ 101, 102, 103 and/or 112.

**Answer:** Denied.

21. Accordingly, Nabors seeks a judgment declaring that the claims of the '260 Patent are invalid, unenforceable, void and of no legal consequence.

**Answer:** C&M admits Nabors seeks a declaratory judgment. C&M denies that Nabors is entitled to the relief it seeks in this lawsuit. The remaining allegations of this paragraph are denied.

**THIRD CAUSE OF ACTION**
**Declaratory Judgment Regarding Alleged Non-compete Agreement**

22. Nabors hereby repeats, re-alleges and incorporates by reference every allegation contained in paragraphs 1 through 21 above as though fully stated herein.

**Answer:** To the extent this paragraph incorporates allegations from prior paragraphs, C&M also incorporates by reference herein its answers to those paragraphs.

23. There is an actual controversy between Nabors and C&M regarding the alleged "'Non-Compete' terms included in [C&M's] drop tickets, delivery tickets, and other rig up paperwork."

**Answer:** C&M admits there is an actual controversy between Nabors and C&M. To the extent this paragraph suggests that the "'Non-Compete' terms, included in [C&M's] drop tickets, delivery tickets, and other rig up paperwork," are not binding, the allegations of this paragraph are denied.

24. On or about June 19, 2019, Nabors and C&M entered into a Master Service Agreement ("MSA"). The MSA states in section 1(a) that the MSA and individual Work Orders (jointly defined as the "Contract") are the ***only*** agreements between the parties. Section 1(b) of the MSA is directly on point (emphasis added):

> In the event of a conflict between the Agreement and the Work Order(s) issued by Nabors in accordance with the Agreement, the provisions of the Agreement shall govern over the conflicting terms of the Work Order(s). **It is expressly understood and agreed that *no* provision of any delivery ticket, invoice, confirmation of purchase order, or other instrument used or provided by Contractor shall supersede the provisions of this Agreement or any Contract**.

**Answer:** The allegations in Paragraph 24 of the Complaint purport to characterize the contents of the MSA, which speaks for itself. C&M denies the allegations in this paragraph to the extent they contradict or otherwise mischaracterize the contents of the MSA and/or the related agreements between Nabors and C&M.

25. Section 7 of the MSA deals with Nabors' right to terminate the contract and any legal remedies thereof (emphasis added):

> Nabors may, at any time, in its *sole* discretion, terminate Work, in whole or in part, under any Contract. In the event of such termination, Contractor shall be paid at the applicable rates contained in the Work Order for the Work satisfactorily performed up to the date of such termination.
>
> * * *
>
> **This paragraph states Nabors' *entire* liability, and Contractor's *sole* remedy, for Nabors' termination of any or all Contracts.** On written notice of such

> termination, Contractor shall promptly remove its personnel, machinery, and equipment from the location and shall further cooperate with Nabors or its designee to ensure an orderly and expeditious transition and completion of the work.

**Answer:** The allegations in Paragraph 25 of the Complaint purport to characterize the contents of the MSA, which speaks for itself. C&M denies the allegations in this paragraph to the extent they contradict or otherwise mischaracterize the contents of the MSA and/or the related agreements between Nabors and C&M.

26. Nabors' Purchase Orders with C&M contain language similar to section 1(a) and (b) of the MSA quoted above. This additional language is important (emphasis added):

> **Buyer objects to, rejects, and shall not be bound by any past or future terms and conditions not set forth herein, including any additional or inconsistent terms shown on Seller's sales confirmation, shipping documents, invoices, documents, or other communication and any additions or inconsistencies therein with the provisions hereof shall be null and void.**

**Answer:** The allegations in Paragraph 26 of the Complaint purport to characterize the contents of the MSA and Nabors' Purchase Orders, which speak for themselves. C&M denies the allegations in this paragraph to the extent they contradict or otherwise mischaracterize the contents of the MSA and/or the related agreements between Nabors and C&M, including but not limited to Nabors' Purchase Orders.

27. C&M's claims for breach of a "non-compete" agreement contained in the alleged "drop tickets, delivery tickets, and other rig up paperwork," violate express terms of the MSA and Nabors' Work Orders. Nabors did not agree to any additional terms, conditions, or provisions.

**Answer:** Denied.

28. C&M's claims for breach of a "non-compete" agreement fail for lack of consideration in whole or in part for the alleged "drop tickets, delivery tickets, and other rig up paperwork."

**Answer:** Denied.

29. C&M's claims for breach of a "non-compete" agreement fail because any person or persons who signed any alleged "drop tickets, delivery tickets, and other rig up paperwork," did not have actual or apparent authority to bind Nabors.

**Answer:** Denied.

30. Accordingly, Nabors seeks a judgment declaring that the non-compete language of the alleged "drop tickets, delivery tickets, and other rig up paperwork," are invalid, unenforceable, void, and of no legal consequence.

**Answer:** C&M admits Nabors seeks a declaratory judgment. C&M denies that Nabors is entitled to the relief it seeks in this lawsuit. The remaining allegations of this paragraph are denied.

**Demand for Jury Trial**

31. Pursuant to Rule 38 of the Federal Rules of Civil Procedure and the Seventh Amendment to the U.S. Constitution, Nabors demands a trial by jury of any and all issues triable of right before a jury.

**Answer:** The allegations of this paragraph contain legal conclusions to which no response is required.

**Prayer for Relief**

C&M denies that Plaintiff is entitled to any of the relief it seeks, whether as sought in its Prayer for Relief, including the relief sought in Paragraphs (a)-(h) thereof, and/or any other relief. Plaintiff's Prayer for Relief therefore should be denied in its entirety and with prejudice, and Plaintiff should take nothing from C&M. C&M requests that the Court award the following relief:

A. A declaration that Nabors has infringed the asserted claims of the '260 Patent;

B. A declaration that each of the claims of the '260 Patent are not invalid;

C. A declaration that the '260 Patent is enforceable;

D. A declaration that C&M's non-compete agreements are enforceable and legal;

E. A denial of the injunctive relief Nabors seeks;

F. A declaration that the causes of action brought by Nabors are not exceptional as defined in 35 U.S.C. § 285;

G. A denial of Nabors' request for attorneys' fees and costs; and

H. A denial of the relief sought by Nabors in its entirety with prejudice.

## DEFENSES

C&M asserts the following Defenses and Affirmative Defenses, without assuming any burden of proof it would not otherwise have. C&M has not yet had sufficient time and opportunity to collect and review all of the information that may be relevant to the matters raised herein, and discovery has not been completed. Accordingly, C&M reserves the right to modify and/or expand these defenses and to take further positions and raise additional defenses as discovery proceeds in this case.

### First Defense

Plaintiff's Complaint fails to state a claim upon which relief can be granted. For example, the Complaint fails to make more than bare conclusory allegations regarding the validity of the '260 Patent. The Complaint fails to provide any factual basis for the assertion that the '260 Patent is invalid. For example, the Complaint fails to identify any prior art reference which discloses the claims of the '260 Patent. Plaintiff's conclusory allegation is insufficient to state a claim.

### Second Defense

Plaintiff's case is not exceptional under 35 U.S.C. § 285.

### Third Defense

Plaintiff's claims are barred in whole or in part by the doctrine of estoppel.

### Fourth Defense

Plaintiff's claims are barred in whole or in part by the doctrine of waiver.

### Fifth Defense

Plaintiff's claims are barred by laches.

**Sixth Defense**

Each of the contractual claims set forth in the Complaint are barred by the doctrines of novation and/or ratification.

**Seventh Defense**

Plaintiff's claims are barred by the doctrine of unclean hands.

**Reservation of Additional Defenses**

C&M hereby reserves the right to assert additional defenses and/or counterclaims if such defenses or counterclaims are discovered during the course of this litigation.

**COUNTERCLAIMS**

Without waiver of any of its rights, including the right to seek dismissal of this action, Defendant C&M Oilfield Rentals LLC D/B/A/ C-MOR Energy Services ("C&M") by and through its counsel, alleges the following counterclaims against Plaintiff/Counterclaim Defendant Nabors as follows:

**NATURE OF THE CLAIMS**

1. C&M brings this action to seek legal and equitable relief based on Nabors' unlawful infringement of C&M's U.S. Patent No. 11,300,260 ("the '260 Patent" or "Asserted Patent"), which generally relates to lighting systems that may be used on drilling rigs; and for breach of contract.

**PARTIES**

2. C&M is a Wyoming limited liability company with its principal place of business located at 3429 Cottonwood Ave., Cody, Wyoming 82414.

3. On information and belief, Nabors is a Delaware corporation having a principal place of business at 515 W. Greens Road, Houston, Texas 77067.

4. On information and belief, the Nabors can be served through counsel in this suit.

## JURISDICTION AND VENUE

5. Subject to C&M's Answer and Defenses, this Court has subject matter jurisdiction over the counterclaims at least under 28 U.S.C. §§ 1331 and 1338(a).

6. Personal jurisdiction over Nabors exists because, at a minimum, Nabors has submitted to the personal jurisdiction of the Court by commencing this action in this District, as set forth in Nabors' Complaint for Declaratory Judgment. This Court also has jurisdiction over Nabors in that Nabors has its principal place of business in Texas and is at home in Texas; and because the counterclaims arise out of Nabors' minimum contacts in the State of Texas and within this judicial district.

7. Venue is proper in this District at least under 28 U.S.C. §§ 1391 and 1400(b).

## FACTUAL BACKGROUND

### C&M'S Development of the CROWN JEWEL

8. C&M markets, leases, and sells oilfield service equipment to customers nationwide.

9. C&M is a market-leading innovator in the development of modular drilling rig lighting systems.

10. Generally, the construction of a well for oil and/or natural gas involves three phases: drilling, completion, and production. The drilling phase must be completed before the other two phases may begin. Well construction is very expensive, in part because the drilling rig and other pieces of equipment are rented by the day. Accordingly, once the operator of a wellsite has begun drilling, it is extremely important to finish that phase of the process as quickly as possible.

11. One consequence of the need to complete drilling as quickly as possible is that operators often choose to drill around the clock, or as close to that schedule as possible. As a result, drilling activity often continues after dark. Because wellsites are almost always in remote locations, there is no readily available source of lighting to keep the wellsite illuminated during nighttime operations.

12. Proper illumination during nighttime operations is exceedingly important. Wellsites are crowded and inherently dangerous workplaces, with many hazards that can cause injury to workers, and these risks are intensified if a wellsite is not adequately illuminated.

13. Prior to C&M's advances in the field, the lighting options available for wellsite operators were limited. The most common solution had long been portable light towers with halogen bulbs. There were numerous limitations with these towers, including that the towers could not be centrally located within a wellsite. As a result, an operator would be required to use multiple towers spaced around the drilling rig, but this was inefficient and created inconsistent lighting.

14. Other rig-mounted lighting systems suffered from drawbacks including weight, difficulty of installation, safety concerns, limited customization, and lack of portability.

15. In March 2018, C&M began offering customers a new drilling rig lighting system under its distinctive CROWN JEWEL® mark.

16. Unlike the large, frame-based design of prior rig-mounted lighting systems, the CROWN JEWEL lighting system uses multiple small lightweight lights that attach via mounting poles and/or brackets directly to the handrail of the rig's crown deck. The light fixture is mounted such that it may be placed in one of at least two discrete positions, a feature that allows the system to be left in place when a rig is moved.

17. C&M has multiple issued U.S. patents, including U.S. Patent No. 11,300,260 ("the '260 Patent" or "Asserted Patent"), two pending U.S. patent applications, and multiple foreign and international applications related to its novel design for a drilling rig lighting system.

18. C&M has devoted substantial time, effort, and resources to the development and promotion of its CROWN JEWEL product and related patents. As a result, the CROWN JEWEL system has achieved commercial success and wide adoption through the industry.

**C&M's '260 Patent**

19. U.S. Patent No. 11,300,260, titled "Elevated structure-mounted lighting system," ("the '260 Patent") issued to named inventors Joshua C. Allison, Josh Haaland, and Jessica Ivanoff, on April 12, 2022. The patent relates generally to lighting systems that may be used on drilling rigs. A true and correct copy of the '260 Patent is attached hereto as Exhibit 1.

20. The '260 Patent, being duly and legally issued by the United States Patent and Trademark Office, is valid and enforceable. C&M owns all rights, title, and interest in and to the '260 Patent, including the rights to assert all causes of action and seek all remedies under the Asserted Patent.

21. Independent claim 1 of the '260 Patent recites:

> A method for illuminating a wellsite, comprising:
>
> selecting along each side of a crown deck on a rig a plurality of mounting locations for LED light fixtures, wherein said selecting step is based on desired lighting conditions for the wellsite surrounding the rig;
>
> mounting one or more LED light fixtures at each of the plurality of selected mounting locations;
>
> attaching the plurality of LED light fixtures to the crown deck using a plurality of elongate members extending above the crown deck and configured to position the light fixtures in proximity to a handrail of the crown deck; and

illuminating the wellsite using the plurality of LED light fixtures.

**Nabors' Accused Product Lighting System**

22. Nabors is in the business of providing oilfield services to the oil and natural gas industry, such as directional drilling services, performance tools, and innovative technologies. *See* Nabors, https://www.nabors.com/our-company/ (last visited Sept. 1, 2022).

23. Nabors enters into agreements with operators, such as Chesapeake Energy or Coterra Energy. Once an agreement has been entered drilling contractors, such as Nabors, are then responsible for managing the rig on the wellsite so that the wellsite produces oil and gas. Nabors will hire third parties, like C&M, to assist in running the rig. In some instances, the operator may request that Nabors use specific third parties.

24. Once C&M is hired to provide and install its CROWN JEWEL lighting system on a drilling rig, C&M provides the drilling contractor with a request for specifications of the rig for the CROWN JEWEL. C&M will then provide the drilling contractor, such as Nabors, with information, marked Privileged and Confidential, so that the drilling contractor engineers can review the documentation and determine if the CROWN JEWEL is sufficient to accommodate that specific rig. Proprietary and Confidential cost studies, drop studies, pictures, videos, etc. are also provided so that the drilling contractor engineers can fully review and analyze the benefits of the CROWN JEWEL system. In some instances, C&M has asked the drilling contractor to sign an NDA because this Confidential and Proprietary information is being shared. Specifically, C&M asked Nabors to sign an NDA, but Nabors claimed the process would take too long and was not necessary because the operator had already signed an NDA. Once the design is approved, C&M will then prepare a job packet for the rig. The job packet will include (1) C-MOR Energy Services Crown Light™ Rig Up Procedure; (2) C-MOR Energy Services Job Safety Analysis (JSA) –

Install; (3) C-MOR Energy Services Crown Light$^{TM}$ Inspection Checklist; (4) C-MOR Energy Services Job Safety Analysis (JSA) – Inspection; (5) C-MOR Energy Services Rig Up Invoice; and (6) C-MOR Energy Services Delivery Ticket. The job packet will accompany the CROWN JEWEL lighting system equipment to the well site. Before and after any work begins, C&M asks that an authorized representative from the operator and from the drilling contractor, Nabors, to sign the agreements. C&M will not install its equipment unless an authorized representative has signed off on the Job Packet. C&M will then install the CROWN JEWEL lighting system, review the work completed, ensure the appropriate paperwork is completed, have an authorized representative sign off on the installation, and photograph the equipment. While on site, C&M adheres to all safety guidelines, including safety meetings, of the operator and drilling Contractor.

25. Once the equipment is installed, C&M charges a day rate for the use of its CROWN JEWEL lighting system. While the equipment is installed on the rig, C&M will often times inspect the equipment and obtain approval from an authorized individual that the equipment is operating correctly and safely. Once the job has been completed, C&M will return to the wellsite and inspect the equipment. It is a part of C&M's agreements that only authorized C&M personnel will remove the CROWN JEWEL lighting system from the rig. Once the CROWN JEWEL lighting system is removed from the rig, C&M will have an authorized representative sign off that the equipment was removed safely and with no damage to the rig equipment.

26. C&M will then provide an invoice for the final payment for the use of the CROWN JEWEL lighting system.

27. C&M has been hired to provide, inspect, install, and remove its CROWN JEWEL lighting systems on more than 62 Nabors drilling rigs to date, including NDTUSA RIG 00894, Nabors 891, Nabors 894, NDTUSA RIG 00891, Nabors X13, Nabors X26, and Nabors X21.

28. On or about February 1, 2022, Nabors hired C&M to install a C&M CROWN JEWEL lighting system on Nabors X26, a well site owned by Coterra Energy. Exhibit 2, Nabors X-26 Signed RU.

29. On or about March 6, 2022, Nabors hired C&M to install a C&M CROWN JEWEL lighting system on Nabors X21, a well site owned by Chesapeake Energy. Exhibit 3, Nabors X-21 Job Packet.

30. On or about December 6, 2021, Nabors began replacing C&M lighting systems with non-C&M lighting systems on multiple Nabors rigs in the United States. On information and belief, Nabors has replaced C&M's CROWN JEWEL lighting systems with non-C&M lighting systems.

31. On or about June 14, 2022, Nabors marketed its "new" ILLUMIC Lighting System on social media, including Twitter and LinkedIn:




@NaborsGlobal, Twitter (Jun. 14, 2022), *https://twitter.com/naborsglobal?lang=en* (last visited Sep. 1, 2022).




LinkedIn (Jun. 14, 2022), *https://www.linkedin.com/company/canrig-drilling-technology-ltd* (last visited Sep. 1, 2022).

32. On information and belief, Nabors used C&M's proprietary information—including at least drop studies, technical drawings, pictures, cost studies, and installation documentation related to the CROWN JEWEL—to create Nabors' own rig-mounted lighting system, that it now sells and installs on customers' wells, and markets as its own "proprietary

design" called the "ILLUMIC Lighting System" ("ILLUMIC" or "Accused Product") specifically "[f]or Contractors and OFS":

NABORS

## ILLUMIC™ Lighting System

Canrig's proprietary design, ILLUMIC lighting system, is designed to maximize workers' visibility by illuminating the overall wellsite using energy efficient and maintenance free light-emitting diode, LED, fixtures mounted at the top of the mast on a custom bracket. The ILLUMIC lighting system reduces noise, CO2 emissions, costs and man-hours related to relocating and maintaining multiple portable light towers on location.

ILLUMIC offers more reach and foot candles per square foot than any other conventional system, replacing an equivalent of up to six diesel light towers on-site. Our engineers designed a frame that does not impact the crown's footprint.

### Key Features of the Lighting System:

- Seamless installation with our custom crown-mounted framing
- Fuel savings of 29 gal/day with a reduction of 213 kw/hr to lessen carbon emissions
- Maintenance-free LEDs increase energy efficiency and reliability
- Lower energy consumption increases LED life span 10+ years
- Lower overall noise on rigsite when replacing light towers
- Automatic on/off capabilities based on available light, adding additional energy savings

*See https://www.nabors.com/for-contractors-ofs/rig-products/illumic-lighting-system/* (last visited Sep. 1, 2022).



*See https://www.nabors.com/for-contractors-ofs/rig-products/illumic-lighting-system/* (last visited Sep. 1, 2022).

33. Nabors' website also offers such customers a downloadable brochure of the Accused Product that highlights certain specifications and "key features":

CANRIG **ILLUMIC™**

*LED Crown-Mounted Lighting System*



Canrig's ILLUMIC Lighting System is designed to maximize workers' visibility and overall wellsite illumination, using energy efficient and maintenance free light-emitting diode, LED, fixtures. Offering more reach and foot candles per square foot, ILLUMIC does not require any adjustments to the footprint of the crown.

**KEY FEATURES**

- Seamless installation with our custom crown-mounted framing
- Lower energy consumption increases LED life span 10+ years
- Fuel savings of 29 gal/day with a reduction of 213 kw/hr to lessen carbon emissions
- Lower overall noise on rigsite when replacing light towers
- Maintenance-free LEDs increase energy efficiency and reliability
- Automatic on/off capabilities based on available light, adding additional energy savings



Each LED kit offers between 600K- 1M lumens with 2-to-4-foot candles in a 150' radius from the rig floor

| Rig Floor Lighting Radius | Foot-Candles (measured w/ light meter) |
|---|---|
| 25 ft | 10-12 ft/c |
| 50 ft | 9-11 ft/c |
| 75 ft | 7-10 ft/c |
| 100 ft | 6-9 ft/c |
| 125 ft | 4-6 ft/c |
| 150 ft | 2-4 ft/c |

© Nabors Industries Ltd. 2022 - All Rights Reserved 1001-MKT-1.1 CANRIG.COM

*See https://www.nabors.com/for-contractors-ofs/rig-products/illumic-lighting-system/* (last visited Sep. 1, 2022).

34. Nabors makes, uses, offers for sale, sells, and/or imports the Accused Products for its fleet of drilling rigs without permission from C&M.

35. The Accused Products are covered by, and thereby infringe, at least claim 1 of the ’260 Patent, as annotated further below.

36. Nabors had at least constructive if not actual notice no later than June 20, 2022, when C&M sent a letter notifying Nabors of the ’260 Patent and its infringing activities.

37. C&M has complied with the notice and marking provisions of 35 U.S.C. § 287 as it pertains to the ’260 Patent.

38. In connection with C&M’s delivery, installation, safety inspections, and rig down of the CROWN JEWEL lighting systems, Nabors received and executed various documents including delivery tickets and invoices, as well as an Acknowledgment of Receipt of Documents and Content to Terms and Conditions, which acknowledged that Nabors had read, understood, and agreed to be bound by the terms of: (1) C-MOR Energy Services Crown Light™ Rig Up Procedure; (2) C-MOR Energy Services Job Safety Analysis (JSA) – Install; (3) C-MOR Energy Services Crown Light™ Inspection Checklist; (4) C-MOR Energy Services Job Safety Analysis (JSA) – Inspection; (5) C-MOR Energy Services Rig Up Invoice; and (6) C-MOR Energy Services Delivery Ticket.

39. On information and belief, the documents were executed by Nabors employees or agents acting as appropriate, authorized representatives of Nabors. C&M performed on-site work, including delivery, installation, safety inspections, and rig down of the CROWN JEWEL lighting systems based on the belief that such Nabors employees had the authority to execute the documents required to perform such work. C&M would not have performed delivery, installation, safety inspections, or rig down of the CROWN JEWEL lighting systems without this authorization.

40. The Acknowledgement of Receipt of Documents and Consent to Terms and Conditions and C-MOR Energy Services Rig Down Inspection prohibited Nabors from engaging

in any business that would be deemed similar to C&M's business without C&M's consent and prohibited Nabors from developing, leasing, or purchasing any directly competitive rig-mounted lighting system within 12 months of rigging down. Exhibit 2, Nabors X-26 Signed RU.

41. On information and belief, Nabors has replaced C&M's CROWN JEWEL lighting system on multiple rigs with other lighting systems that compete with C&M's CROWN JEWEL lighting systems.

## CAUSES OF ACTION

### Count 1: Infringement of the '260 Patent

42. C&M incorporates by reference and realleges the foregoing paragraphs of the counterclaims as though fully set forth herein.

43. C&M owns all substantial rights, interest, and title in and to the '260 Patent, including the sole and exclusive right to seek and obtain all remedies under the Asserted Patent.

44. On information and belief, Nabors, either alone or in concert with others, and without permission or license from C&M, has directly infringed and continues to infringe, literally or under the doctrine of equivalents, one or more claims of the '260 Patent in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, importing, installing, supplying in the United States all or part of the Accused Products.

45. For example, the Accused Products are covered by at least claim 1 of the '260 Patent, as annotated below.

46. The Accused Product meets the claim limitations, "A method for illuminating a wellsite," and "selecting along each side of a crown deck on a rig a plurality of mounting locations for LED light fixtures, wherein said selecting step is based on desired lighting conditions for the wellsite surrounding the rig," as described and shown in its brochure:




*See https://www.nabors.com/for-contractors-ofs/rig-products/illumic-lighting-system/* (last visited Sep. 1, 2022) (annotations added).

47. The Accused Product meets the limitations "mounting one or more LED light fixtures at each of the plurality of selected mounting locations" and "attaching the plurality of LED light fixtures to the crown deck using a plurality of elongate members extending above the crown deck and configured to position the light fixtures in proximity to a handrail of the crown deck;" as shown on the photo of an installed Accused Product on its website:




*See https://www.nabors.com/for-contractors-ofs/rig-products/illumic-lighting-system/* (last visited Sep. 1, 2022) (annotations added).

48. The Accused Product meets the limitation, "illuminating the wellsite using the plurality of LED light fixtures" as described and shown in the paragraphs above.

49. On information and belief, Defendants have actively induced and continue to induce others to directly infringe one or more claims of the '260 Patent, and/or have contributed and continue to contribute to others' infringement of one or more claims or the '260 Patent.

50. On information and belief, Nabors had actual knowledge of the '260 Patent and that their activities constitute direct, indirect, or joint infringement of the '260 Patent, or have willfully blinded themselves to the infringing nature of their activities, and yet continue their infringing activities.

51. On information and belief, Defendant's infringement of the '260 Patent has been and will continue to be willful, deliberate, and intentional.

52. As a direct and proximate result of Nabors' infringement of the '260 Patent, C&M has also suffered irreparable harm for which it has no adequate remedy at law, including its efforts to license its patents and patented products in the United States. C&M will continue to suffer irreparable injury and the impairment of the value of its patent rights until and unless Nabors is permanently enjoined from further infringement of the '260 Patent.

53. As a direct and proximate result of Nabors' infringement of the '260 Patent, C&M has suffered and will continue to suffer injury for which it is entitled to damages under 35 U.S.C. § 284 adequate to compensate C&M in amount to be proven at trial, and in no event less than a reasonably royalty. Additionally, as a result of the willful and deliberate nature of Nabors' infringing activities, C&M is entitled to enhanced damages, and recovery of attorneys' fees and costs incurred in prosecuting this action.

**Count 2: Breach of Contract**

54. C&M incorporates by reference and realleges the foregoing paragraphs of the counterclaims as though fully set forth herein.

55. On February 2, 2022, Nabors executed the Acknowledgment of Receipt of Documents and Consent to Terms and Conditions for Nabors X26.

56. On March 6, 2022, Nabors executed the Acknowledgment of Receipt of Documents and Consent to Terms and Conditions for Nabors X21.

57. By executing the Acknowledgment of Receipt of Documents and Consent to Terms and Conditions for Nabors X21 and Nabors X26, Nabors acknowledged that it read, understood, and agreed to be bound by the terms of: (1) C-MOR Energy Services Crown Light™ Rig Up

Procedure; (2) C-MOR Energy Services Job Safety Analysis (JSA) – Install; (3) C-MOR Energy Services Crown Light™ Inspection Checklist; (4) C-MOR Energy Services Job Safety Analysis (JSA) – Inspection; (5) C-MOR Energy Services Rig Up Invoice; and (6) C-MOR Energy Services Delivery Ticket.

58. For example, the Acknowledgment of Receipt of Documents and Consent to Terms and Conditions for Nabors X21 and Nabors X26 states in paragraph 5:

> In consideration for the equipment and services provided by C&M Oilfield Rentals, LLC d/b/a C-MOR Energy Services™ to Company, Company and/or its Affiliates, Agents, Representatives, Subcontractors or Employees shall not, in any manner represent, provide services, develop, or engage in any aspect of business that would be deemed similar in nature to the business of C&M Oilfield Rentals, LLC d/b/a C-MOR Energy Services™ without the written consent of C&M Oilfield Rentals, LLC d/b/a C-MOR Energy Services™ nor shall Company use any Confidential Information or Intellectual Property of C&M Oilfield Rentals, LLC d/b/a C-MOR Energy Services™ to develop any product which would compete directly or indirectly with C&M Oilfield Rentals, LLC d/b/a C-MOR Energy Services™. Company warrants and guarantees that throughout the duration of its engagement and for a period of 12 months following this culmination, completion, or termination of this Agreement, Company shall not directly or indirectly engage in any business that would be considered similar in nature to with C&M Oilfield Rentals, LLC d/b/a C-MOR Energy Services™, its subsidiaries, and any current or former clients and/or Company's. Nor shall Company solicit any client, vendor, officer, staff, or employee for the benefit of himself/herself or a third party that is or may be engaged in a similar business.

59. As another example, the Acknowledgment of Receipt of Documents and Consent to Terms and Conditions for Nabors X21 and Nabors X26 states in paragraph 7:

> In consideration of C-MOR's agreement to provide the goods/equipment covered by this Invoice, Company and its Affiliates hereby agree, for a period of twelve (12) months from the date of this invoice, not to develop, lease or purchase from any third party any other rig-mounted lighting system(s) directly competitive with the Crown Jewel™ system. All parties to this document shall not use, disclose or in any way disseminate confidential information.

> Confidential information shall include price, terms, and timing in addition to the C-MOR Crown Jewel™ Design, Construction, Parts and Materials.

60. As another example, the C-MOR Energy Services Delivery Ticket and the C-MOR Energy Services Rig Up Invoice for Nabors X26 states:

> Company shall not in any manner or form, at any time disclose, reveal, unveil, divulge or release, either directly or indirectly, any aforementioned Proprietary or Confidential Information for use or for the benefit of any third party and shall at all times endeavor to protect all Confidential information belonging to the Company. Notwithstanding anything elsewhere in these Terms, the terms of this Section shall apply to Confidential information of C-MOR Energy Services™ amounting to a trade secret, proprietary, and/or intellectual property rights for as long as such information remains such under applicable law and shall survive the termination of any related documents….Company therefore understands and agrees that a violation or breach hereunder, or any threat thereof, may produce irreparable damage and immediate injury to C-MOR Energy ServicesTM. In the event of a breach or threatened breach of Company's obligations under this Section, C-MOR Energy ServicesTM shall be entitled to seek injunctive relief to enjoin and restrain such breach. Such equitable remedies shall be in addition to and not in lieu of any damages because of such violation or breach.

61. As another example, the C-MOR Energy Services Delivery Ticket and the C-MOR Energy Services Rig Up Invoice for Nabors X26 states:

> In consideration for the equipment and services provided by C&M Oilfield Rentals, LLC d/b/a C-MOR Energy Services™ to Company, Company and/or its Affiliates, Agents, Representatives, Subcontractors or Employees shall not, in any manner represent, provide services, develop, or engage in any aspect of business that would be deemed similar in nature to the business of C&M Oilfield Rentals, LLC d/b/a C-MOR Energy Services™ without the written consent of C&M Oilfield Rentals, LLC d/b/a C-MOR Energy Services™ nor shall Company use any Confidential Information or Intellectual Property of C&M Oilfield Rentals, LLC d/b/a C-MOR Energy Services™ to develop any product which would compete directly or indirectly with C&M Oilfield Rentals, LLC d/b/a C-MOR Energy Services™. Company warrants and guarantees that throughout the duration of its engagement and for a period of 12

> months following this culmination, completion, or termination of this Agreement, Company shall not directly or indirectly engage in any business that would be considered similar in nature to with C&M Oilfield Rentals, LLC d/b/a C-MOR Energy Services™, its subsidiaries, and any current or former clients and/or Company's. Nor shall Company solicit any client, vendor, officer, staff, or employee for the benefit of himself/herself or a third party that is or may be engaged in a similar business.

62. Nabors agreed to the terms of the Acknowledgment of Receipt of Documents and Consent to Terms and Conditions for each of Nabors X21 and Nabors X26 in consideration for the goods and services described therein, including at least the: (1) C-MOR Energy Services Crown Light™ Rig Up Procedure; (2) C-MOR Energy Services Job Safety Analysis (JSA) – Install; (3) C-MOR Energy Services Crown Light™ Inspection Checklist; (4) C-MOR Energy Services Job Safety Analysis (JSA) – Inspection; (5) C-MOR Energy Services Rig Up Invoice; and (6) C-MOR Energy Services Delivery Ticket.

63. Nabors breached the terms of the Acknowledgment of Receipt of Documents and Consent to Terms and Conditions by making, using, selling, offering to sell non-C&M lighting systems.

64. Nabors has agreed to terms similar to those in paragraphs 58-61 in several other invoices, inspection signoffs, installation acknowledgments and the like in connection with the installation of the C-MOR CROWN JEWEL on other drilling rigs.

65. Nabors has breached the terms similar to those in paragraphs 58-61 in several other invoices, inspection signoffs, installation acknowledgments and the like by installing a non-C&M lighting system on other drilling rigs, including, but not limited to, RIGS.

66. The limitations of the MSA do not override the terms of the Acknowledgment of Receipt of Documents and Consent to Terms and Conditions. *See* UCC § 2-207. First, the MSA is silent as to Nabors' obligations to C&M, therefore the terms in the Acknowledgment of Receipt

of Documents and Consent to Terms and Conditions are not in conflict with the terms of the MSA. Second, the Acknowledgment of Receipt of Documents and Consent to Terms and Conditions is the final agreement between the parties. Third, the terms contained in the Acknowledgment of Receipt of Documents and Consent to Terms and Conditions has been included in C&M's Job Packets since at least October 20, 2020. *See* Exhibit 4, Nabors 894 Delivery Ticket. Nabors has failed to object to this language until the filing of this Declaratory Action, almost two years after Nabors first signed off on C&M's terms. Nabors has not objected within a reasonable time after notice of C&M's terms. Finally, the Acknowledgment of Receipt of Documents and Consent to Terms and Conditions includes signatures from a Nabors' employee who on information and belief was authorized to sign on Nabors' behalf. *See* Exhibit 5, Nabors X26 Acknowledgment of Receipt of Documents and Consent to Terms and Conditions including a signature for "Authorized Rig Manager Acknowledgement."

67. As a result of Nabors' breach, C&M has incurred actual damages.

**Count 3: Promissory Estoppel**

68. C&M incorporates by reference and realleges the foregoing paragraphs of the counterclaims as though fully set forth herein.

69. Nabors promised and represented to C&M that it would not steal, copy, or improperly use C&M's lighting systems for its own benefit. C&M reasonably and substantially relied on these promised and representations to its detriment in agreeing to rent C&M's CROWN JEWEL lighting systems to Nabors and in allowing Nabors access to C&M's proprietary information, including at least drop studies, technical drawings, pictures, cost studies, and installation documentation related to the CROWN JEWEL. C&M's reliance was foreseeable by

Nabors. Injustice can only be avoided by enforcing the promises and representations made by Nabors.

70. C&M's reliance has resulted in damages caused by Nabors' conduct.

**Count 4: Unjust Enrichment**

71. C&M incorporates by reference and realleges the foregoing paragraphs of the counterclaims as though fully set forth herein.

72. Nabors has been unjustly enriched by gaining access to C&M's CROWN JEWEL lighting system and technology. C&M is entitled to all profits improperly gained by Nabors use of C&M's proprietary information, including at least drop studies, technical drawings, pictures, cost studies, and installation documentation related to the CROWN JEWEL; otherwise, Nabors would be unjustly enriched.

**Count 4: Fraud**

73. C&M incorporates by reference and realleges the foregoing paragraphs of the counterclaims as though fully set forth herein.

74. Nabors made false representation to C&M with the intent to induce C&M to rely on such false representations. Nabors represented to C&M that it would not steal, copy, or improperly use C&M's lighting system for its own benefit. C&M reasonably and substantially relied on these promises and representations to its detriment.

75. Nabors' representations were false, and Nabors knew the representations were false and acted with the intent to harm C&M. C&M relied on Nabors' false representations to its detriment. As a proximate cause of Nabors' fraud, C&M suffered damages. As a result of Nabors' false representations, C&M has suffered actual damages in an amount to be determined at trial.

Additionally, as a result of the willful and deliberate nature of Nabors' false representations, C&M is entitled to recover its attorneys' fees and costs incurred in prosecuting this action.

## JURY DEMAND

76. Pursuant to Federal Rule of Civil Procedure 38(b), C&M requests a trial by jury on all issues.

## PRAYER FOR RELIEF

For these reasons, C&M respectfully requests that the Court award the following relief:

a. Judgment be awarded in favor of C&M and against Nabors on all counts, including a finding that Nabors has directly and indirectly infringed the '260 Patent;

b. A permanent injunction enjoining Nabors, its owners, affiliates, officers, directors, managers, agents, servants, employees, trainees, and all persons in active concert or participation with it, from continuing to infringe the '260 Patent, including but not limited to under 35 U.S.C. § 283;

c. An award of damages adequate to compensate C&M for Nabors' infringement of the '260 Patent under 35 U.S.C. § 284;

d. A determination that Nabors' infringement of the '260 Patent has been willful and deliberate;

e. A determination that this case is "exceptional" under 35 U.S.C. § 285, thereby entitling C&M to an award of its reasonable attorneys' fees and costs in prosecuting this action;

f. An award of enhanced damages based on the willful and deliberate nature of Nabors' infringement;

g. An award of damages adequate to compensate C&M for Nabors' breach of their contractual obligations;

h. Awarding C&M interest, including prejudgment and post-judgment interest, on all damages computed;

i. An award of court costs and attorneys' fees as allowed by Tex. Civ. Prac. & Rem. Code Section 38.001 and any other applicable law; and

j. Such other relief as this Court deems fair, just, and appropriate.

Dated: September 6, 2022

Respectfully submitted,

/s/ *David J. Levy*

Jason C. White (*pro hac vice* forthcoming)
***Attorney in Charge***
Illinois Bar No. 6238352
jason.white@morganlewis.com
Karon N. Fowler (*pro hac vice* forthcoming)
Illinois Bar No. 6333623
karon.fowler@morganlewis.com
Eugene S. Hwangbo (*pro hac vice* forthcoming)
Illinois Bar No. 6336078
eugene.hwangbo@morganlewis.com
**Morgan, Lewis & Bockius LLP**
110 North Wacker Drive, Suite 2800
Chicago, IL 60606-1511
T. (312) 324-1000
F. (312) 324-1001

David Levy
State Bar No. 12264850
Southern District of Texas No. 13725
david.levy@morganlewis.com
Susan Stradley
State Bar No. 24116787
Southern District of Texas No. 3710386
susan.stradley@morganlewis.com
**Morgan, Lewis & Bockius LLP**
1000 Louisiana, Suite 4000
Houston, Texas 77002
T. (713) 890-5000
F. (713) 890-5001

***Attorneys for Defendant and Counter-Plaintiff C&M Oilfield Rentals, LLC***

**CERTIFICATE OF SERVICE**

The undersigned certifies that a true and correct copy of the foregoing document was served on September 6, 2022, via electronic mail on all counsel of record who have appeared in this case per Local Rule 5.3.

/s/ *David J. Levy*
David J. Levy