**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **NABORS DRILLING TECHNOLOGIES USA, INC.,** | § | |
| **Plaintiff and Counter-Defendant,** | § | |
| **vs.** | § | **CIVIL ACTION NO. 4:22-cv-02140** |
| **C&M OILFIELD RENTALS, LLC D/B/A C-MOR ENERGY SERVICES,** | § | |
| **Defendant and Counter-Plaintiff.** | § | |

**NABORS'S REPLY IN SUPPORT OF ITS MOTION TO**
**EXCLUDE OPINIONS OF C&M'S DAMAGES EXPERT**

Nabors Drilling Technologies USA, Inc. files this reply in support of its Motion to Exclude the Opinions of C&M Oilfield Rentals, LLC's Damages Expert, W. Todd Schoettelkotte (Doc.181) ("Motion").

**I. [redacted] precludes recovery of lost profits on all of Nabors's systems under *Panduit* and renders Schoettelkotte's opinions unreliable.**

C&M desperately seeks to run away from [redacted] that the Crown Jewel lighting system was not and is not the only available drilling lighting solution accepted by customers. But the case law is clear that C&M cannot obtain lost profits on all Nabors's systems under *Panduit* because [redacted] demonstrates the presence of acceptable non-infringing substitutes in the market.

The "but for" inquiry under *Panduit* focuses on marketplace conditions, requiring reconstruction of the relevant market "as it would have developed absent the infringing product." *Grain Processing Corp. v. American Maize–Prods.*, 185 F.3d 1341, 1350 (Fed. Cir. 1999). In particular, "if there is a noninfringing alternative which any given purchaser would have found acceptable and bought, then the patentee ***cannot obtain lost profits*** for that particular sale." *Mentor*

*Graphics Corp. v. EVE-USA, Inc.*, 851 F.3d 1275, 1286 (Fed. Cir. 2017) (emphasis added). To that end, the relevant market analyzed under *Panduit* includes (i) the "patented invention" and (ii) "other devices or substitutes similar in physical and functional characteristics to the patented invention." *Micro Chemical, Inc. v. Lextron, Inc.*, 318 F.3d 1119, 1124 (Fed. Cir. 2003); *accord Grain Processing*, 185 F.3d at 1355 ("Consumer demand defines the relevant market and relative substitutability among products therein.").

In his *Panduit* analysis, C&M's damages expert Schoettelkotte relied on [redacted]. Doc.181-2 [Ex. 1, Report of W. Todd Schoettelkotte] ¶ 55. According to Schoettelkotte, [redacted]. *Id.* Consistent with the Federal Circuit's instruction to consider the market "as it would have developed absent the infringing product," *Grain Processing*, 185 F.3d at 1350, [redacted]" Doc.181-2 ¶ 55. [redacted]

However, while Schoettelkotte [redacted], he ignored that [redacted] in making a lost profits computation. Instead, Schoettelkotte simply assumed [redacted] and computed lost profits as if C&M had [redacted] Doc.181-2 ¶¶ 17, 63-67. But there can be no "but for" causation entitling C&M to lost profits [redacted]. Rather, it is axiomatic that to obtain lost profits on every accused infringement, there must

be no acceptable non-infringing substitutes available. *See Panduit*, 575 F.2d at 1156 (requiring an "absence of acceptable noninfringing substitutes" to recover lost profits); *Mentor*, 851 F.3d at 1286 (stating that lost profits are not available "if there is a noninfringing alternative which any given purchaser would have found acceptable and bought"). Schoettelkotte's computations therefore directly contradict [redacted].

Though C&M argues that any substitutes were either not available or not acceptable, [redacted] confirms the opposite. By definition, the relevant market [redacted] includes (i) the patented invention and (ii) acceptable, available non-infringing substitutes. *Micro Chemical*, 318 F.3d at 1124. As such, if [redacted] sales of acceptable, alternative drilling lighting systems other than the Crown Jewel. C&M also attempts to discredit the "significant evidence" of [redacted] *Grain Processing*, 185 F.3d at 1351, with self-serving attacks from C&M's technical expert, Dr. Wooley, on the alternatives. Even crediting these statements, Dr. Wooley did not purport to survey and evaluate all alternative lighting systems in the relevant market, only [redacted] Doc.202-4 [Ex. 4, Report of Gary Wooley] ¶ 647.

Accoridngly, Schoettelkotte's lost profits opinions are unreliable and should be excluded.

## II. Courts do not allow recovery of lost profits based on internally inconsistent methodologies, and no court has accepted Schoettelkotte's relationship theory.

Although courts permit recovery of lost profits based on a variety of market reconstruction theories, none have allowed using economic models that make inherently inconsistent assumptions about the market, let alone under the inconsistent methodological mashup created by Schoettelkotte. None of the cases cited by C&M hold that recovery is permitted under a theory

making fundamentally incompatible assumptions about the market, such as a theory that assumes both the absence and existence of acceptable non-infringing alternatives. Likewise, no cases hold that an expert can rely on assumptions contrary to the economic reality, such as [redacted] C&M's reliance on *Orthoflex, Inc. v. ThermoTek, Inc.*, 986 F.Supp.2d 776 (N.D. Tex. 2013) is misplaced, as the case involved not patent claims but antitrust claims with different measures of damages. *Id.* at 793 n.14 (describing "the 'before-and-after' measure and the 'yardstick' measure" as the "two most common methods of quantifying antitrust damages," neither of which were mentioned by Schoettelkotte). C&M also contends that *Mentor Graphics Corp. v. EVE-USA, Inc.*, 851 F.3d 1275 (Fed. Cir. 2017), supports Schoettelkotte's novel analysis creating separate groups of accused products "based on the existing relationships, or lack thereof, between C&M and the customer." Doc.202, at 9. But *Mentor* explains that a patentee must establish entitlement to lost profits "a customer-by-customer basis"; it does not say that patentee-customer relationships can or should be considered making the analysis. *Mentor*, 851 F.3d at 1286. In sum, none of the cases cited by C&M endorse use of "relationships" as a basis for determining lost profits.

## III. Schoettelkotte failed to properly apportion.

For lost profits, C&M contends that under that *Mentor*, Schoettelkotte did not need to apportion beyond his "utilization of the *Panduit* factors." Doc.202, at 11. Not so. The Federal Circuit recently rejected this very argument, concluding that "*Mentor's* unusual facts," which were undisputed, gave rise to only a "narrow[]" holding that "Mentor's damages are tied to the worth of its patented features" under the highly specific facts of the case. *Sunoco Partners Mktg. & Terminals L.P. v. Powder Springs Logistics, LLC*, No. 2023-1218, 2026 WL 122544, at *18 (Fed. Cir. Jan. 16, 2026) (quoting *Mentor*, 851 F.3d at 1289). In contrast, the *Panduit* factors are strongly disputed here, and Schoettelkotte failed to properly apportion.

As for reasonably royalty, while a *Georgia-Pacific* analysis can apportion, it must be done through a "***proper*** analysis of the *Georgia-Pacific* factors," as C&M acknowledges (emphasis added). Doc.202, at 11. Schoettelkotte performs no such analysis. As explained in Nabors's Motion, Schoettelkotte performs no apportionment calculations, fails to quantify the value of non-patented elements, and does not isolate or compute the incremental value of the patented elements. Schoettelkotte's conclusory assertions do not suffice for a proper apportionment analysis.

**IV. Schoettelkotte should not be allowed to testify on C&M's non-patent claims given his nonexistent or insufficient opinions, which are also unreliable.**

For the reasons discussed in Nabors's Reply in Support of its Motion to Exclude Evidence of Damages Concerning C&M's Non-Patent Counterclaims and for Related Relief, which is filed contemporaneously with this reply and incorporated herein by reference, the Court should bar Schoettelkotte from providing testimony on C&M's non-patent claims at trial, as Schoettelkotte provided either a nonexistent or insufficient damages opinions on those claims, which renders them unreliable.

## CONCLUSION

For the foregoing reasons, the Court should grant Nabors's Motion.

Respectfully submitted,

**HAYNES AND BOONE, LLP**
*<u>/s/ Jason W. Whitney</u>*
David H. Harper, *Attorney in Charge*
Texas No. 09025540; SDTX No. 35388
david.harper@haynesboone.com
2801 N. Harwood Street, Suite 2300
Dallas, Texas 75201
Phone: 214-651-5000; Fax: 214-651-5940

March 11, 2026

Natasha Breaux
Texas No. 24073688; SDTX No. 3017774
natasha.breaux@haynesboone.com
1221 McKinney Street, Suite 4000
Houston, TX 77010
Phone: 713-547-2154; Fax: 713-236-5680
Jason Whitney
Texas No. 24066288; SDTX No. 1673877
jason.whitney@haynesboone.com
112 East Pecan Street, Suite 2400
San Antonio, Texas 78205
Phone: 210-978-7000; Fax: 210-978-7450

**ATTORNEYS FOR PLAINTIFF NABORS DRILLING TECHNOLOGIES USA, INC.**

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the foregoing document was served on March 11, 2026 on all counsel of record via electronic mail.

*/s/ Jason W. Whitney*
Jason W. Whitney