**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **NABORS DRILLING TECHNOLOGIES USA, INC.,** | § | |
| **Plaintiff and Counter-Defendant,** | § | |
| **vs.** | § | **CIVIL ACTION NO. 4:22-cv-02140** |
| **C&M OILFIELD RENTALS, LLC D/B/A C-MOR ENERGY SERVICES,** | § | |
| **Defendant and Counter-Plaintiff.** | § | |

**NABORS'S RESPONSE TO C&M'S MOTION TO EXCLUDE THE OPINIONS OF QUENTIN MIMMS**

Plaintiff Nabors Drilling Technologies USA, Inc. ("Nabors") files this Response in Opposition to C&M Oilfield Rentals, LLC's ("C&M") Motion to Exclude the Opinions of Quentin Mimms (Doc.186) ("Motion"). For the reasons explained below, the Court should deny C&M's Motion.

## INTRODUCTION

Mr. Mimms's opinions are grounded in sufficient facts and data, including the conclusions of Nabors's technical expert and corroborating fact witness testimony. C&M's challenges amount to nothing more than disagreements with Mr. Mimms's factual assumptions and conclusions—the type of disputes that are properly tested through vigorous cross-examination and contrary evidence at trial, not wholesale exclusion under *Daubert*.

C&M raises three principal objections, none of which has merit. First, C&M contends that Mr. Mimms improperly excluded from some of his calculations ILLUMIC systems that did perform all steps of the '260 Patent after its Certificate of Correction issued. But Federal Circuit precedent requires that damages must be apportioned to exclude non-infringing uses. Second, C&M argues that Mr. Mimms failed to conduct a sufficiently granular analysis of the availability

of non-infringing alternatives. Yet Mr. Mimms relied on Dr. Josefowicz's opinions, fact witness testimony, and documentary evidence to identify multiple alternatives that were on the market or readily obtainable—exactly the type of reasoned analysis courts routinely admit. Third, C&M contends that Mr. Mimms should not have factored Nabors's bargaining power into his hypothetical negotiation and lost profits analysis. But the Federal Circuit has long recognized that qualitative considerations, including negotiating leverage, are permissible inputs, provided that the expert explains how such factors influence the damages estimates. Mr. Mimms did exactly that.

Mr. Mimms's methodology is sound, his factual assumptions are disclosed and well-supported, and his conclusions are relevant to the damages inquiry. Thus, C&M's motion should be denied in its entirety.

**BACKGROUND**

C&M's counterclaims allege that Nabors's ILLUMIC lighting systems infringe U.S. Patent No. 11,300,260 ("the '260 Patent"). Doc.115 ¶¶ 83-95. C&M retained W. Todd Schoettelkotte to estimate damages resulting from Nabors's alleged infringement of the '260 Patent. Ex.1 ¶ 2. Nabors retained Mr. Quentin Mimms to rebut Schoettelkotte's opinions and independently evaluate damages figures. Ex.2 ¶ 1.

The asserted claims of the '260 Patent cover methods for illuminating well sites using lighting systems mounted on drilling rigs. *See* Ex.1 ¶ 21-22. On August 1, 2023, a Certificate of Correction issued for the '260 Patent. Doc.115 ¶ 85. Because C&M alleges infringement of the '260 Patent "as corrected by the certificate of correction," Mr. Mimms endeavored to exclude from his independent estimates all ILLUMIC systems that did not perform all steps of the claimed methods on or after the correction issued. Ex.2 ¶ 39-44, 100-10, 174-76, 183-84. Accordingly, his first estimate calculated lost profits on [redacted] of the ILLUMIC lighting system—the only version of Nabors's system that was *designed* on or after August 1, 2023. Ex.2 ¶¶ 17, 40-41,

101. Mr. Mimms's second and third estimates calculated damages for ILLUMIC systems *installed* on or after August 1, 2023. *Id.* ¶¶ 17, 42-44, 102-110, 183-84. Notwithstanding, Mr. Mimms also addressed Schoettelkotte's *Panduit* analysis, demonstrating that Schoettelkotte's estimates were overstated *even if* [redacted] ccused rigs infringed after August 1, 2023. *Id.* ¶¶ 45-48.

C&M argues that Mr. Mimms (1) should have included non-infringing products in all of his calculations; (2) should have been required to conduct a granular, product-by-product availability analysis of non-infringing alternatives, scrutinizing development timelines, commercial readiness dates, and customer acceptance metrics in painstaking detail; and (3) should have ignored that Nabors would have leverage in a hypothetical negotiation with C&M based on the influence Nabors has in choosing the lighting system that will be installed on its rigs, at least one design-around alternative that Nabors could easily implement, and Nabors's high rig count (which would allow it to negotiate for high-volume discounts). *See* Doc.186, at 1-2. C&M is wrong.

## LEGAL STANDARD

Under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993), and Federal Rule of Evidence 702, "courts are charged with a 'gatekeeping role,' the objective of which is to ensure that expert testimony admitted into evidence is both reliable and relevant." *Sundance, Inc. v. DeMonte Fabricating Ltd.*, 550 F.3d 1356, 1360 (Fed. Cir. 2008); *see also Skidmore v. Precision Printing And Packaging, Inc.*, 188 F.3d 606, 617-18 (5th Cir. 1999). In particular, "an expert's testimony must be (a) based upon sufficient facts or data, (b) the product of reliable principles and methods, and (c) these principles and methods must be applied to the facts of the case." *Port of Houston Auth. of Harris Cnty. Texas v. Louis Dreyfus Co. Houston Exp. Elevator LLC*, 2022 WL 22897322, at *3 (S.D. Tex. Mar. 10, 2022) (citing Fed. R. Evid. 702). "The Court's gatekeeping role is no substitute, however, for the adversarial process." *Canrig Drilling Tech. Ltd.*

*v. Trinidad Drilling L.P.*, 2016 WL 7188657, at *5 (S.D. Tex. Dec. 12, 2016) (citing *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 250 (5th Cir. 2002)). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596 (citing *Rock v. Arkansas*, 483 U.S. 44, 61 (1987)).

## ARGUMENT

Mr. Mimms appropriately limited his damages analysis to ILLUMIC systems that infringed the '260 Patent following issuance of its certificate of correction, in accordance with controlling Federal Circuit authority. *See infra* Section IV.A. His assessment of multiple available non-infringing alternatives rests on sound foundations, including the opinions of Nabors's technical expert (Dr. Jack Josefowicz), corroborating fact witness testimony, and supporting market evidence. *See infra* Section IV.B. And Mr. Mimms was entitled to incorporate Nabors's influence over its own rigs and corresponding bargaining leverage into his hypothetical negotiation analysis because he (1) identified the factual bases for this conclusion and (2) articulated how this qualitative factor influenced his damages estimates. *See infra* Section IV.C.

### I. Mr. Mimms properly excluded from his analysis ILLUMIC systems that did not and could not have infringed the '260 Patent because they were designed and/or installed before its Certificate of Correction was issued.

When calculating a reasonable royalty using the "hypothetical negotiation" approach, a patent damages expert assumes that the asserted patent claims are valid and infringed. *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1325 (Fed. Cir. 2009). But that assumption is not as absolute and "axiomatic" as C&M suggests. *See* Doc.186, at 4. To the contrary, damages must be "apportioned to separate out noninfringing uses, and patentees cannot recover damages based on sales of products with the mere capability to practice the claimed method." *Niazi Licensing Corp. v. St. Jude Med. S.C.*, 30 F.4th 1339, 1357 (Fed. Cir. 2022).

Failing to separate out non-infringing uses is grounds for exclusion. S*ee Roland Corp. v. inMusic Brands, Inc.*, 2025 WL 926703, at *15 (Fed. Cir. Mar. 27, 2025) ("[An] expert's damages calculation, based in part on non-infringing sales of non-accused products, 'cannot support [a] jury's damages award, for § 284 and our precedent proscribe awarding damages for non-infringing activity.'") (quoting *Enplas Display Device Corp. v. Seoul Semiconductor Co.*, 909 F.3d 398, 411-12 (Fed. Cir. 2018)); *see also Ecolab Inc. v. Dubois Chems., Inc.*, 2023 WL 7019266, at *12-13 (D. Del. Oct. 25, 2023) (excluding all damages opinions as "overstated" where expert "include[d] all of [defendant's] sales of the Accused Products in her royalty base, rather than apportioning the royalty base to the sales of Accused Products associated with instances of alleged infringement") (citing *Niazi*, 30 F.4th at 1357). Conversely, separating out non-infringing uses cannot be grounds for exclusion under *Daubert*.

"[I]nfringement of a multi-step method claim cannot lie by the performance of a single step after issuance of the patent when the initial steps were performed prior to issuance." *Monsanto Co. v. Syngenta Seeds, Inc.*, 503 F.3d 1352, 1360 (Fed. Cir. 2007). Accordingly, neither Mr. Mimms nor C&M's damages expert should consider an ILLUMIC system infringing unless it performed *all* steps of the '260 Patent on or after August 1, 2023. *Classen Immunotherapies, Inc. v. Shionogi, Inc.*, 993 F. Supp. 2d 569, 578 (D. Md. 2014) ("When a 'method' or 'process' patent like the '069 or '639 patents are at issue, each of the steps of the patented method must occur post-patent issuance for infringement under § 271 to occur."); *AntiCancer, Inc. v. Berthold Techs., U.S.A., LLC*, 924 F. Supp. 2d 916, 920 (E.D. Tenn. 2013) ("In addition to the requirement that all steps to the method must be performed, all steps to the method must be performed when the patent is in force, *i.e.* after the patent has issued, for an act of infringement to occur."); *Baseball Quick, LLC v. MLB Advanced Media, L.P.*, No. 11CIV1735TPG, 2012 WL 1071230, at *4 (S.D.N.Y. Mar. 30, 2012)

("[I]t is not possible for MLB to infringe the '716 Patent by making Condensed Games of baseball games played prior to [the issuance date of], because MLB would not be performing all of the steps required in Claim 1 of the '716 Patent during the term of the patent."); *accord* 5 Chisum on Patents § 16.04 ("Acts before issuance . . . do not themselves infringe the patent."). Mr. Mimms understands this. Ex.2 ¶ 100 [redacted]). C&M and Schoettelkotte do not.

The Certificate of Correction issued for the '260 Patent on August 1, 2023. Doc.115 ¶ 85. And since C&M alleges infringement of the '260 Patent "as corrected by the certificate of correction" (Doc.115 ¶¶ 83-95), C&M cannot recover damages for infringing acts that occurred prior to that date. *Sw. Software, Inc. v. Harlequin Inc.*, 226 F.3d 1280, 1294 (Fed. Cir. 2000) ("[A] certificate of correction is only effective for causes of action arising after it was issued."); *Novo Indus., L.P. v. Micro Molds Corp.*, 350 F.3d 1348, 1356 (Fed. Cir. 2003); *Parallel Networks Licensing, LLC v. Int'l Bus. Machs. Corp.*, 83 F. Supp. 3d 571, 574 (D. Del. 2015) (finding that where "plaintiff has asserted infringement based on the corrected claims . . . plaintiff may not recover damages prior to the date of correction.").

Claim 1 of the '260 Patent requires "selecting along each side of a crown deck on a rig a plurality of mounting locations for LED light fixtures" (the "selecting step"). '260 Patent 6:3-6. For the first of Mr. Mimms's three damages estimates, he assumed that this selecting step occurs during the design process for each version of Nabors's ILLUMIC lighting system. Ex.2 ¶¶ 17, 101. Thus, his first estimate excluded rigs designed prior to August 1, 2023. *Id.* For Mr. Mimms's second and third damages estimates, on the other hand, he assumed that the selecting step occurs

during installation of the rigs and excluded systems installed prior to August 1, 2023, accordingly. *Id.* ¶¶ 17, 102-03.

C&M argues that these non-infringement positions are disputed. Doc.186, at 6. But their technical expert, Gary R. Wooley, [redacted] Ex.3, at 248:9-14. Accordingly, [redacted]. *Id.* at 252:2-8.

C&M also faults Mr. Mimms for failing to take account of [redacted] that "generated rental revenue from use of the ILLUMIC lighting system on or after August 1, 2023." Doc.186, at 5. However, "[b]ecause domestic entities do not infringe a process patent if they practice the process before the beginning of the patent term, even if they sell the products of the process during the term of the patent . . . the statute does not reach pre-issuance use of the later-patented process." *Mycogen Plant Sci., Inc. v. Monsanto Co.*, 252 F.3d 1306, 1318 (Fed. Cir. 2001), *vacated on other grounds*, 535 U.S. 1109 (2002) (citing *Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d 770, 773–74 (Fed. Cir. 1993)). C&M's reliance on when accused systems produced revenues—rather than when they performed the steps of the '260 Patent—is misplaced.

C&M further criticizes Mr. Mimms for relying on legal guidance from Nabors's counsel. Doc.186, at 7 (citing Ex.4, at 94:25–95:6, 95:21–25). But the cited deposition testimony shows only that Mr. Mimms was instructed on a basic legal principle: all steps of a claim must be performed after the operative date of a patent for infringement to occur. *See Monsanto*, 503 F.3d at 1360. Such reliance is entirely appropriate.

In any event, Mr. Mimms provided a calculation adopting Schoettelkotte's assumption that all [redacted] rigs infringed the '260 Patent if used after August 1, 2023. Ex.2 ¶¶ 45-48; Ex.4, at 247:15-248:4. So C&M's position is not that Mr. Mimms must provide an estimate assuming C&M's infringement theories are correct—that argument would be moot. Rather, C&M argues that Mr. Mimms *cannot* provide damages for subsets of the accused products based on different assumptions about infringement. C&M is wrong. S*ee Roland Corp.*, 2025 WL 926703, at *15.

Thus, there is no basis for excluding Mr. Mimms's opinions. Should C&M have concerns, it may avail itself of its right to cross-examine Mr. Mimms at trial and present contrary evidence. *Daubert*, 509 U.S. at 596.

## II. Mr. Mimms sufficiently addressed the availability of acceptable non-infringing alternatives based on information provided by Dr. Jack Josefowicz (Nabors's technical expert) and others.

"The issue of whether there were available, acceptable, non-infringing alternatives to an allegedly infringing product is a factor in determining damages for infringement." *Canrig Drilling*, 2016 WL 7188657, at *3 (citing *Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1393 (Fed. Cir. 2003)). A non-infringing alternative is "available" if it is either on the market or (1) the defendant could readily obtain all of the materials needed to implement the alternative; (2) the alternative was well known in the field at the time of the infringement; and (3) the defendant had all of the necessary equipment, know-how, and experience to use it. *Grain Processing Corp. v. Am. Maize-Prods. Co.*, 185 F.3d 1341, 1348, 1353-54 (Fed. Cir. 1999).

Mr. Mimms "reviewed the '260 Patent, reviewed deposition testimony and exhibits, and relied upon Dr. Jack Josefowicz, Nabors' technical expert, to assess the availability of acceptable non-infringing alternatives." Ex.2 ¶ 84. Following that assessment, Mr. Mimms identified several non-infringing alternatives, including: (1) light towers, (2) the crown mounted HALO system made by Apollo Lighting Solutions/Cleantek Industries, (3) rig lighting systems provided by

NorAm Drilling, Ensign Energy Services, and True Drilling LLC, and (4) Swivelpole's "stanchion mounted" system. *Id.* ¶¶ 84-94. For each, Mr. Mimms identified the sources he relied on to demonstrate that the alternative is "non-infringing" and "acceptable." *Id.* And he cited testimony indicating that these alternatives are or were on the market within the past 10 years. *See, e.g., id.* ¶¶ 89-92. Accordingly, Mr. Mimms's conclusion that "[b]esides C&M and Nabors, there are other companies . . . that provide lighting solutions for rigs" and that "these companies' products and light towers would provide acceptable non-infringing alternatives" is well-supported and reliable. *Id.* ¶ 94. Mr. Mimms also assumed, based on Dr. Josefowicz's report, that "Nabors could make minor changes to the accused . . . system in order to supply another acceptable non-infringing alternative." *Id.* ¶ 93; *see* Ex.5 ¶¶ 242-44 (explaining that removing a light from one side of the ILLUMIC and replacing the remaining light with a higher wattage LED would render Nabors's system noninfringing without sacrificing wellsite illumination). Accordingly, he concluded that "there are non-infringing alternatives [including modifications of the ILLUMIC system] that would have been available to Nabors at the time of the hypothetical negotiation." Ex.2 ¶ 161.

Notwithstanding Mr. Mimms's well-reasoned analysis and clear disclosure of supporting factual assumptions, C&M argues that Mr. Mimms's lost profits opinions should be struck because he "failed" to assess whether alleged non-infringing alternatives are available. *See* Doc.186, at 8-13. C&M is wrong. At a high level, C&M believes that Mr. Mimms was required to provide or cite "product-specific timelines, development/commercial readiness dates, supply capacity, or regulatory/customer-acceptance analyses tied to the relevant damages period." *Id.* at 9. That is overkill, and C&M cites no authority holding that an expert must offer such granular proof of the availability of non-infringing alternatives. All that Mr. Mimms had to do was clarify his assumptions regarding the availability of alternatives—*i.e.*, what or who he relied on to show that

an alternative was "on the market" or "readily" implementable. *See Grain Processing*, 185 F.3d at 1348 (noting that an alternative is "available" if it is "on the market" or "readily" obtainable by the alleged infringer); *Nat'l Prods. Inc. v. Innovative Intelligent Prods. LLC*, 2024 WL 3582366, at *3-4 (W.D. Wash. July 30, 2024) (noting that a damages expert's assumptions regarding the existence and availability of non-infringing alternatives go to the credibility of his testimony, not the admissibility).

In any event, to the extent C&M believes that Mr. Mimms "incorrectly assumed that the non-infringing alternatives were available during the relevant time frame when they were not, that matter may be easily addressed through cross-examination and contrary testimony" and does not warrant exclusion. *See Emerson Elec. Co. v. Suzhou Cleva Elec. Appliance Co.*, 2015 WL 8916113, at *10 (E.D. Mo. Dec. 15, 2015) (denying motion to exclude damages expert's opinions regarding non-infringing alternatives despite acknowledging "that it is unclear from the current record whether [the expert] considered whether the non-infringing products he identified were available or on the market at the time of infringement"); *see also AU New Haven, LLC v. YKK Corp.*, 2019 WL 1254763, at *20 (S.D.N.Y. Mar. 19, 2019), *objections overruled*, 2019 WL 2992016 (S.D.N.Y. July 8, 2019) (finding that plaintiff's motion to exclude—which argued that expert opinions had insufficient factual bases supporting conclusion that non-infringing alternatives were available—was "essentially disagreement with the conclusion that goes to weight rather than admissibility"). Nabors addresses C&M's specific challenges to each alternative below:

<u>Light Towers</u>: C&M argues that Mr. Mimms cannot rely on Dr. Josefowicz's conclusion that "light towers" are an available alternative since Dr. Josefowicz does not "identify evidence showing whether this [non-infringing alternative] was available during the relevant damages period." Doc.186, at 10. Nabors contests C&M's characterization of Dr. Josefowicz's report and

addresses the issue fully in Nabors's Opposition to Defendant's Motion to Exclude the Opinions of Dr. Jack Josefowicz (which is being filed contemporaneously with this Opposition). Notwithstanding, it is "perfectly reasonable for a finance and damages expert to adopt the conclusions of other experts. Whether those conclusions are sound can be explored at trial through cross examination and other expert testimony." *EMC Corp. v. Pure Storage, Inc.*, 154 F. Supp. 3d 81, 115-17 (D. Del. 2016) (denying motion to exclude damages expert's testimony regarding non-infringing alternatives where damages expert relied on technical experts and discussions with defendant's Chief Product Architect) (quoting *Formax, Inc. v. Alkar–Rapidpak–MP Equip., Inc.*, 2014 WL 3057116, at *2 (E.D. Wis. July 7, 2014)).

Dr. Josefowicz opined that light towers are an "acceptable non-infringing alternative" that "have long been used to illuminate wellsites." Ex.5 ¶¶ 228-29; *see also id.* ¶ 224 (noting Dr. Josefowicz considered, as part of his analysis, whether "there were acceptable non-infringing alternatives *available on the market*") (emphasis added). Mr. Mimms was entitled to rely on that opinion. Additionally, Mr. Mimms did not rely on Dr. Josefowicz alone to determine the availability of this alternative; he also cited documents produced by C&M. *See* Ex.2 ¶¶ 88-89 [redacted]

C&M also seems to argue that Mr. Mimms cannot generally discuss a class of alternatives (i.e., "light towers") and must instead point to specific, branded products. Doc.186, at 10. But such particularity is not required. Accordingly, C&M has not come close to demonstrating that Mr. Mimms's opinions regarding light towers are unreliable.

Cleantek Industries/Apollo Lighting Solutions HALO Systems: C&M raises similar objections here, to which Nabors responds in kind. As before, Mr. Mimms is entitled to rely on Dr. Josefowicz's conclusions regarding the availability and acceptability of the Cleantek/Apollo

HALO system. *See EMC Corp.*, 154 F. Supp. 3d at 115-17; Ex.5 ¶¶ 231-36 (noting that Cleantek/Apollo "has been offering its HALO lighting system since at least 2017" and that [redacted] Ex.2 ¶¶ 93-94; Ex.4, at 141:2-12. Mr. Mimms also relied on other sources, including [redacted], and testimony from Mr. Garcia Lares. Ex.2 ¶¶ 90-91; Ex.4, at 121:13–123:10; *see also* Ex.1 ¶¶ 73-76 ([redacted]).

Moreover, C&M's own damages expert assumed that the Cleantek/Apollo HALO systems might be [redacted] non-infringing alternatives. Ex.1 ¶ 53 ([redacted]). Accordingly, Schoettelkotte provided a damages estimate that [redacted]. *Id.* ¶ 54. C&M tries to fault Mr. Mimms for doing the same—its arguments hold no water.

Swivelpole: C&M again faults Mr. Mimms for his reliance on Dr. Josefowicz, which is improper. *See* Doc.186, at 11; *EMC Corp.*, 154 F. Supp. 3d at 115-17; Ex.5 ¶¶ 237-41 (noting that "the Swivelpole has been offered since at least 2014"); Ex.2 ¶ 93. Strangely, C&M also faults Mr. Mimms for relying on a Swivelpole catalogue that *pre-dates* the damages period, thereby demonstrating that this non-infringing alternative was on the market *prior to* infringement. Doc.186, at 11. But that is sufficient proof that an alternative was available. *See Slimfold Mfg. Co.*

*v. Kinkead Indus.*, 932 F.2d 1453, 1458 (Fed. Cir. 1991) (finding that "old hardware" was available to defendant at the time of infringement since they and others had used the substitute technology *before* the period of infringement). Accordingly, C&M once more fails to demonstrate that Mr. Mimms's opinions fail *Daubert*.

Minor Changes to the ILLUMIC System: "Without the infringing product, a rational would-be infringer is likely to offer an acceptable noninfringing alternative, if available, to compete with the patent owner rather than leave the market altogether." *Grain Processing*, 185 F.3d at 1351. Accordingly, it was perfectly appropriate for Mr. Mimms to rely on Dr. Josefowicz's report in concluding that a minor modification would supply a readily available non-infringing alternative. *See* Ex.5 ¶ 243 (noting that suggested "changes are readily feasible and implemented with relatively little effort in tweaking the existing designs"); *see also AstraZeneca AB v. Apotex Corp.*, 782 F.3d 1324, 1334 (Fed. Cir. 2015) ("There is little incentive . . . for the infringer to take a license rather than side-step the patent with a simple change in its technology."). Here, Mr. Mimms can assume based on Dr. Josefowicz's report that the modification was available since (1) Nabors could readily obtain all of the materials needed to implement the alternative (its own system and a strong LED light); (2) the alternative was well known in the field at the time of the infringement (there is no dispute that LED lights were known in the field and that a more powerful light can take the place of two less powerful lights); and (3) the defendant had all of the necessary equipment, know-how, and experience to use it (Dr. Josefowicz states that the changes are relatively simple). Ex.5 ¶¶ 242-44; *see Grain Processing*, 185 F.3d at 1353-54. Mr. Mimms's opinions based on this non-infringing alternative should not be struck.

NorAm Drilling & True Drilling LLC Products: C&M contends that Mr. Mimms's opinions regarding these non-infringing alternatives should be excluded because: (1) his knowledge of the

acceptability and availability of this alternative rests on a February 2023 declaration from Mr. Garcia Lares that predates the relevant damages period and (2) Nabors's technical expert doesn't provide an opinion on these products. Doc.186, at 12 Both theories fail. As discussed, evidence that a non-infringing alternative was on the market *prior* to infringement is sufficient to demonstrate availability. *See Slimfold*, 932 F.2d at 1458. Additionally, courts do not exclude expert testimony just because they rely on the testimony of the alleged infringer's employees rather than a technical expert. *See, e.g.*, *Kraft Foods Grp. Brands LLC v. TC Heartland, LLC*, 232 F. Supp. 3d 632, 635 (D. Del. 2017) (denying motion to exclude expert's testimony regarding the availability of a non-infringing alternative and the cost of producing such an alternative despite plaintiff's objection that expert relied on defendant's employees' "unsubstantiated opinions about the availability and cost of such an alternative"); *EMC Corp.*, 154 F. Supp. 3d at 115-17 (denying motion to exclude damages expert's testimony regarding non-infringing alternatives where damages expert relied on discussions with defendant's Chief Product Architect). Mr. Mimms's opinions regarding NorAm Drilling and True Drilling products do not fail *Daubert*.

Cyclone Drilling Products: Similarly, C&M faults Mr. Mimms for relying on the testimony of Ms. Carolina Stopkoski as to the Cyclone Drilling products (and again for discussing products as a class rather than with hyper-specificity). Doc.186, at 12-13. But as above, so too here—Mr. Mimms's opinions are not excludable just because he relied on Stopkoski. *See Kraft Foods*, 232 F. Supp. 3d at 635.

Because all of Mr. Mimms's opinions are well-reasoned, disclose his assumptions and the sources behind them, and are based on highly relevant information, the Court should not exclude them. *See Nat'l Prods.*, 2024 WL 3582366, at *3-4.

**III. Mr. Mimms opinions regarding Nabors's influence and corresponding bargaining power in a hypothetical negotiation with C&M are reliable, relevant, and well-supported by the record.**

Joshua Allison, the CEO of C&M, testified as follows in his deposition: [redacted] Ex.6, at 211:2-8. Based in part on this testimony, Mr. Mimms concluded that Nabors "had significant influence on decisions regarding the lighting system Nabors would include on each rig." Ex.2 ¶¶ 96-97; Ex.4, at 174:5-175:22, 187:4-190:13. C&M's own damages expert reached a similar conclusion. *See* Ex.1 ¶ 90; Ex.7, at 55:16-56:15 (agreeing that Nabors had influence on what lighting system was on their rigs during the relevant damages period). And even if Nabors lacked in reality the influence that Mr. Allison believed existed, his subjective belief in Nabors's significant influence would have affected a hypothetical negotiation. *E.g.*, Doc.102, Aug. 18, 2023 Preliminary Injunction Hearing Tr., at 21:17-19, 22:20-23:1 (relaying his belief that Nabors's customers had "no other choice" but to use Nabors lighting). Because C&M's CEO believed Nabors possessed the ability to dictate what lighting systems could be used, that would give Nabors much greater apparent bargaining power in any negotiation. But Mr. Mimms's conclusion was not based solely on Mr. Allison's testimony. As Mr. Mimms explained in his deposition, multiple additional data points support the same inference. *See generally* Ex.4, at 174:5-207:3.

First, Mr. Mimms observed that Nabors was [redacted] demonstrating that Nabors convinced its operators to adopt its preferred lighting system more often than not. *Id.* at 176:15-178:16. Second, because Nabors could modify its own system to be non-infringing—as Dr. Josefowicz explains—Nabors could market its lighting system as part of a "one-stop shop" experience for operators and influence them to

adopt the modified ILLUMIC system using this "positive selling point." *Id.* at 179:7-183:4. And even if Nabors opted for a third-party lighting system, like Cleantek/Apollo's HALO system, so long as Nabors remains responsible for maintenance and repairs, the benefits to working with Nabors alone (rather than Nabors and C&M) would persist. *Id.* Third, because the cost of a lighting system pales in comparison to the price of renting the rig itself, Mr. Mimms noted that an operator who has already committed to renting a rig from Nabors is unlikely to resist Nabors's preference for a particular lighting system. *Id.* at 190:14-192:22. Thus, Mr. Mimms's "significant influence" opinions are based on sufficient facts and data tied directly to facts of this case.[1]

Mr. Mimms concluded that this significant influence translates directly into bargaining power during a hypothetical negotiation with C&M. *Id.* at 202:11-203:13. But he identified additional sources of leverage as well. For instance, because Nabors would effectively be negotiating [redacted] lighting systems, it would be able to push for high-volume discounts. *Id.* at 165:6-23. [redacted]. That downward pressure on price is not hypothetical—[redacted] *Id.* at 165:24-166:18. Though [redacted] *Id.* Additionally,

[1] C&M criticizes Mr. Mimms for crediting the preceding facts over Mr. Garcia Lares's testimony that customers are free to choose which lighting system is installed on a rig that a customer rents from Nabors. Doc.186, at 15. However, as explained by Mr. Mimms, that testimony should not be viewed in isolation. Ex.4, at 195:18-196:2. Moreover, regardless of Nabors's customers' ability to choose lighting systems, C&M's CEO *subjectively believed* Nabors was controlling what lighting systems were used, and that belief alone would impact the negotiations. Ultimately, C&M disagrees with how Mr. Mimms weighed the evidence before him in reaching conclusions—that is not grounds for exclusion. *See Daubert*, 509 U.S. at 596.

because Nabors could simply modify its own system to avoid infringement, it need not yield to licensing terms that would end up costing more than the redesign suggested by Dr. Josefowicz. *Id.* at 206:5-207:3.

Notwithstanding these well-supported conclusions grounded in its own CEO's unequivocal testimony [redacted] C&M contends that Mr. Mimms should not have relied on Nabors's influence or bargaining power in calculating damages estimates. Doc.186, at 14-18. Again, C&M is wrong. Because Mr. Mimms explained how this qualitative consideration influenced his estimates, his analysis is reliable and should not be excluded under the *Daubert* standard.

To derive his reasonable royalty estimate, Mr. Mimms employed the "hypothetical negotiation" or "willing licensor-willing licensee" framework which "attempts to ascertain the royalty upon which the parties would have agreed had they successfully negotiated an agreement just before infringement began." *Willis Elec. Co. v. Polygroup Ltd.*, 166 F.4th 1363, 1384 (Fed. Cir. 2026) (citing *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009)); Ex.2 ¶ 111. "A critical consideration in this analysis is the amount that the alleged infringer would agree to pay as a willing licensee." *Id.* (citing *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1121 (S.D.N.Y. 1970)). The Federal Circuit has recognized that this analysis "necessarily permits qualitative analysis." *Id.* at 1385-86. Thus, "[i]t is sufficient for an economic expert to explain how qualitative considerations influence where a royalty should fall within an already-apportioned numerical range." *Id.* (citing *Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1298 (Fed. Cir. 2015)) (finding that district court did not abuse its discretion in admitting damages expert's *Georgia-Pacific* analysis over defendant's objection that it was a "purely qualitative discussion").

That is exactly what Mr. Mimms did. First, he identified a numerical range for his royalty rate based primarily on quantitative factors. *See* Ex.2 ¶¶ 172-74 (reasoning that the parties would have agreed to a reasonable royalty [redacted] Then, he determined that Nabors's influence would grant it "substantial power in the negotiations" and "offset" any favorable negotiating position for C&M. *Id.* Thus, his final license rate of [redacted] fell right in the middle of the calculated range. *Id.* Similarly, Mr. Mimms explains exactly how Nabors's influence and negotiating power impacts his lost profit calculations: they undermine and offset the impact—if any—of C&M's prior customer relationships, prompting Mr. Mimms to apply a market-share adjustment to profits on *all* units. *Id.* ¶ 107. C&M's complaints are nothing more than straw man arguments, and none of Mr. Mimms's opinions should be excluded.

## CONCLUSION

Mr. Mimms's opinions regarding the certificate of correction's impact on damages, the availability of non-infringing alternatives, and Nabors's negotiating power are all well-supported and admissible. C&M's motion seeks to exclude testimony based on disagreements that go to weight, not admissibility, and should be resolved through the adversarial process at trial. For the foregoing reasons, Nabors respectfully requests that the Court deny C&M's Motion to Exclude the Opinions of Quentin Mimms in its entirety.

Respectfully submitted,

**HAYNES AND BOONE, LLP**

*/s/ David H. Harper*
David H. Harper, *Attorney in Charge*
Texas No. 09025540; SDTX No. 35388
david.harper@haynesboone.com
2801 N. Harwood Street, Suite 2300

Natasha Breaux
Texas No. 24073688; SDTX No. 3017774
natasha.breaux@haynesboone.com
1221 McKinney Street, Suite 4000
Houston, TX 77010
Phone: 713-547-2154; Fax: 713-236-5680
Jason Whitney

Dallas, Texas 75201
Phone: 214-651-5000; Fax: 214-651-5940

March 12, 2026

Texas No. 24066288; SDTX No. 1673877
jason.whitney@haynesboone.com
112 East Pecan Street, Suite 2400
San Antonio, Texas 78205
Phone: 210-978-7000; Fax: 210-978-7450

**ATTORNEYS FOR PLAINTIFF NABORS DRILLING TECHNOLOGIES USA, INC.**

**CERTIFICATE OF SERVICE**

The undersigned certifies that a true and correct copy of the foregoing document was served on March 12, 2026 on all counsel of record via electronic mail.

*<u>/s/ David H. Harper</u>*
David H. Harper