**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **NABORS DRILLING TECHNOLOGIES USA, INC.,** | § | |
| | § | |
| **Plaintiff and Counter-Defendant,** | § | |
| | § | |
| **vs.** | § | |
| | § | **CIVIL ACTION NO. 4:22-cv-02140** |
| **C&M OILFIELD RENTALS, LLC D/B/A C-MOR ENERGY SERVICES,** | § | |
| | § | |
| **Defendant and Counter-Plaintiff.** | § | |
| | § | |

**NABORS'S REPLY IN SUPPORT OF ITS MOTION TO STRIKE/EXCLUDE NEW INFRINGEMENT THEORIES RAISED BY C&M'S TECHNICAL EXPERT**

Nabors Drilling Technologies USA, Inc. ("Nabors") files this reply in support of its Motion to Strike and Exclude New Infringement Theories Raised by C&M Oilfield Rentals, LLC's ("C&M") Technical Expert Not Disclosed in C&M's Final Infringement Contentions (Doc.189) ("Motion").

## ARGUMENT

C&M's Response (Doc.212) disregards the law concerning infringement of method claims and mischaracterizes the content of C&M's Final Contentions. There is no legal authority allowing C&M's technical expert Dr. Wooley to expand the Final Contentions by alleging new and different activities practicing the Asserted Claims, and the Court should grant Nabors's Motion.

### I. Because method claims can only be infringed by acts that perform the claimed steps, the essential part of C&M's Final Contentions are Nabors's accused activities.

C&M ignores the foundational differences between apparatus and method claims, but those distinctions affect the content of the infringement contentions and require C&M to specifically identify Nabors's activities alleged to perform the steps of the asserted method claims.

"[T]he concept of 'use' of a patented method or process is fundamentally different from the use of a patented system or device." *NTP, Inc. v. Research in Motion, Ltd.*, 418 F. 3d 1282, 1317 (Fed. Cir. 2005). That is because "[a] method, by its very nature, is nothing more than the steps of which it is comprised. The invention recited in a method claim is the performance of the recited steps." *Id.* at 1322.

Recognizing the differences, the Federal Circuit has on many occasions distinguished how an apparatus claim may be infringed (through an accused device itself) with how a method claim may be infringed (not merely through a device, but by practicing all steps of the claimed method).

For example, in *Standard Havens Products, Inc. v. Gencor Industries, Inc.*, 953 F.2d 1360 (Fed. Cir. 1991), the Federal Circuit concluded that because the asserted patent "claims a method for producing asphalt, not the apparatus for implementing that process," the "sale . . . of an unclaimed apparatus alone does not make [defendant] a[n] . . . infringer of the patented method." *Id.* at 1374. In *Joy Technologies., Inc. v. Flakt, Inc.*, 6 F.3d 770 (Fed Cir. 1993), the court stated that "a method or process claim is directly infringed only when the process is performed," and "the sale of equipment to perform a process is not a direct infringement." *Id.* at 773-74. In *NTP, Inc. v. Research in Motion, Ltd.*, 418 F. 3d 1282 (Fed. Cir. 2005), the Federal Circuit concluded that "[b]y merely supplying products to its customers in the United States, [defendant] . . . cannot infringe [plaintiff's] asserted method claims under section 271(f)." *Id.* at 1322-23. In *Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*, 576 F. 3d 1348 (Fed. Cir. 2009) (en banc), the court reasoned that "it cannot be said that [defendant] has somehow 'supplied' all of the elements of [plaintiff's] patented method through its devices unless those devices actually performed all of the steps required by the claims." *Id.* at 1359. And in *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197 (Fed. Cir. 2010), the Federal Circuit affirmed an infringement verdict on the asserted apparatus claims, but

reversed and granted judgment as a matter of law of non-infringement on the "asserted method claims from each of three patents in suit" because the evidence did not demonstrate practice of all the steps. *Id.* at 1205-06.

Thus, to infringe method claims, the critical fact question is not whether a device possesses a structure that could theoretically perform the claimed methods, but when and how each step of the claimed method was performed. Simply pointing to "device drawings," as C&M does, ignores that the key contentions for method claims are the activities allegedly performing the steps.

## II. C&M's Final Contentions do not accuse Nabors's "design process" of performing any claim steps, only Nabors's acts of "installing, using, testing, and/or servicing."

C&M acknowledges that its Final Contentions are required to "identify C&M's specific theories of Nabors' infringement." Doc.212, at 2. It argues that the Final Contentions meet that requirement by "includ[ing] excerpts of Nabors' design drawings" showing how Nabors "cho[se] specific mounting locations for LED light fixtures in the design process." Doc.212, at 2; *see also id.* at 5-6 (referring to the "design process"). These arguments, however, are incorrect and mischaracterize the Final Contentions in two important ways.

First, not once do the Final Contentions contend that Nabors's design process performed any steps of the Asserted Claims. Rather, the designing (and making) theories appear only in Dr. Wooley's later report. These subsequent additions are significant because, as even C&M does not dispute, Nabors's design process involves "different facts occurring at different times" as compared to the "installing, using, testing, and/or servicing" processes accused in the Final Contentions. Doc.189, at 9. For example, any selecting of LED light locations during Nabors's design process was performed by different people doing different analyses months or sometimes years earlier than Nabors's installing, using, testing, and/or servicing activities. *See id.*

Second, where the Final Contentions include design drawings, those are expressly identified as "example[s]" of how Nabors allegedly performed the claimed steps "[w]hen installing, using, testing, and/or servicing the accused lighting system." In the Final Contentions for [redacted], C&M's asserts that: "***When installing, using, testing, and/or servicing*** the accused lighting system, Nabors [performs the selecting step]. ***For example***," followed by an excerpt of the drawing for the "General Arrangement, Lights, [redacted] Doc.189-3 [Final Contentions, Exhibit A-2 [redacted] at 10-11 (emphasis added); *accord* Doc.212-2 [Final Contentions, Exhibit A-1 [redacted] at 10-11 (using identical language followed by an excerpt from the drawing for "General Arrangement, Lights, [redacted] Thus, the design drawings in the Final Contentions solely illustrate how Nabors allegedly infringes "[w]hen installing, using, testing, and/or servicing the accused lighting system."

### III. Dr. Wooley improperly raises new infringement theories beyond C&M's Final Contentions, and those opinions are properly stricken and excluded.

The activities accused in the Final Contentions—"installing, using, testing, and/or servicing" ILLUMIC lighting system—are not mere "general language," as C&M contends. Doc.212, at 3. Rather, they represent the key elements necessary to allege Nabors's "performance of the recited steps" in C&M's method claims. *See NTP*, 418 F. 3d at 1322. The Final Contentions do not accuse Nabors's "designing" and "making" activities of performing steps of C&M's asserted method claims. Instead, Dr. Wooley's report belatedly raises these new theories of practicing the asserted method claims, theories that indisputably involve "different facts" regarding infringement that "occurr[ed] at different times." Doc.189, at 9. Nabors does not fault Dr. Wooley simply "because [he] does not use the exact language" in the Final Contentions. Doc.212, at 6. Indeed, Nabors acknowledged that while Dr. Wooley changes "using" in the Final Contentions to "operating or using" in his report, "those are equivalent in scope." Doc.189, at 3

n.3. But Dr. Wooley cannot inject wholly new theories as to how and when Nabors allegedly performed steps of the asserted method claims, theories involving new facts and new times, that were not disclosed in the Final Contentions.[1] As such, Dr. Wooley's opinions that "designing" or "making" the accused ILLUMIC system performs any step of or directly infringes C&M's asserted claims should be stricken and excluded.

## CONCLUSION

For the foregoing reasons, the Court should grant Nabors's Motion.

Respectfully submitted,

**HAYNES AND BOONE, LLP**
*/s/ Jason W. Whitney*
David H. Harper, *Attorney in Charge*
Texas No. 09025540; SDTX No. 35388
david.harper@haynesboone.com
2801 N. Harwood Street, Suite 2300
Dallas, Texas 75201
Phone: 214-651-5000; Fax: 214-651-5940

March 19, 2026

Natasha Breaux
Texas No. 24073688; SDTX No. 3017774
natasha.breaux@haynesboone.com
1221 McKinney Street, Suite 4000
Houston, TX 77010
Phone: 713-547-2154; Fax: 713-236-5680
Jason Whitney
Texas No. 24066288; SDTX No. 1673877
jason.whitney@haynesboone.com
112 East Pecan Street, Suite 2400
San Antonio, Texas 78205
Phone: 210-978-7000; Fax: 210-978-7450

**ATTORNEYS FOR PLAINTIFF NABORS DRILLING TECHNOLOGIES USA, INC.**

[1] Regarding timing, C&M argues that "the [asserted] claim recites steps occurring during the design process," and specifically the "language . . . requires, as the first step, selecting mounting locations for light fixtures, which occurs during the design phase." Doc.212, at 5. This is the first instance where C&M has argued that the "first step" must occur "during the design phase," and even Dr. Wooley does not consider only the "design phase" in analyzing the first step. *E.g.*, Doc. 189-5 ¶ 169 (opining that the first "limitation is met by designing, making, installing, and operating or using the accused ILLUMIC lighting system"). Nonetheless, C&M's new argument bolsters Nabors's position that it does not infringe the asserted claims because "13 of 14 ILLUMIC models [were] designed entirely ***before*** the '260 Patent's Certificate of Correction issued." *See* Doc.128, at 17. That is because "all steps to the method must be performed when the patent is in force, i.e. after the patent has issued, for an act of infringement to occur." *AntiCancer, Inc. v. Berthold Techs., U.S.A., LLC*, 924 F. Supp. 2d 916, 920 (E.D. Tenn. 2013). Thus, if the "first step" can only happen "during the design phase," the 13 accused ILLUMIC lighting models cannot infringe because Nabors's design process for them happened before the '260 Patent became effective and in force with the Certificate of Correction. *See* Doc.128, at 17-19.

**CERTIFICATE OF SERVICE**

The undersigned certifies that a true and correct copy of the foregoing document was served on March 19, 2026 on all counsel of record via electronic mail.

*/s/ Jason W. Whitney*
Jason W. Whitney